IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GREGORY STEWART, on behalf of himself and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br><br>v.<br><br>BAPTIST MEMORIAL HEALTH CARE CORPORATION,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 2:21-cv-02377-SHM-cgc<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER APPROVING CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES AND COSTS

Before the Court are Plaintiffs' September 5, 2024 Unopposed Motion for Final Approval of Class Settlement, ECF No. 34, and Plaintiffs' July 1, 2024 Motion for Attorney's Fees and Costs, ECF No. 26.

The Court held a fairness hearing on September 19, 2024, at which it heard arguments by counsel. No one appeared in opposition. For the following reasons, the Motion for Final Approval of Class Action Settlement is GRANTED. Plaintiffs' Motion for Attorney's Fees and Costs is also GRANTED.

I.   **Background**

The Fair Credit Reporting Act ("FCRA") is intended to protect consumers' "right to privacy." See 15 U.S.C. § 1681(a)(4); see also United States v. Bormes, 568 U.S. 6, 7 (2012). Section 1681b(b)(2) provides that a person generally "may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" the consumer has authorized procurement after being notified through a written disclosure that a report may be obtained for employment purposes. Section 1681b(b)(3)(A) provides that one who takes an adverse employment action "based in whole or in part" on a consumer report for employment purposes must generally first "provide to the consumer to whom the report relates . . . a copy of the report [and] a description in writing of the rights of the consumer."

This dispute arises from Defendant Baptist Memorial Health Care Corporation's alleged violations of the FCRA's employment provisions. Specifically, Plaintiffs allege Defendant violated 15 U.S.C. §§ 1681(b)(b)(3) of the FCRA by failing to:

1.   provide applicants and employees who were subject to an adverse employment action, based in whole or in part on their consumer report, pre-adverse action notice, including a copy of their consumer report, before being subjected to an adverse employment action, and

2.   provide applicants and employees a summary of their FCRA rights.

(See ECF No. 1.) Plaintiffs allege Defendant also violated 15 U.S.C. §§ 1681(b)(b)(2)(A)(i)-(ii) by obtaining and using consumer reports for employment purposes "without first making a lawful disclosure and obtaining the requisite authorization." (See ECF No. 13-1.)

After informal discovery and negotiations, the parties obtained the aid of an experienced FCRA mediator and negotiated a class-wide settlement agreement for a "Disclosure and Authorization Class" and a "Pre-Adverse Action Subclass." (See ECF No. 26-1, at 2.) On December 28, 2023, the parties filed their Amended Unopposed Motion for Preliminary Approval of Class Settlement. (See ECF No. 19.)

At that time, the parties believed the Disclosure and Authorization Class consisted of approximately 14,041 members "who applied for a position with Defendant" and "about whom Defendant procured a consumer report between June 7, 2019, through August 8, 2022." (See ECF No. 19-1, at 3-4.) The Settlement Administrator later determined this class consisted of approximately 13,149 members. (See ECF No 34-1, at 1 n.1.)

The Pre-Adverse Action Subclass was believed to consist of approximately 111 members who "are members of the Disclosure and Authorization Class;" who "Defendant declined to hire;" who "are

3

marked in Defendant's system as 'Failed Background Report,' 'Null,' or 'Other;'" and "who Defendant has been unable to confirm receipt of a pre-adverse action notice." (See ECF No. 19-1, at 4.)

The proposed settlement would establish a $420,566.00 fund, the maximum amount to be paid by Defendant to settle the claims, with unclaimed funds reverting to Defendant. (See ECF No. 19-1, at 4.) Disclosure and Authorization Class Members would receive a pro rata share of $365,066.00 and Pre-Adverse Action Subclass Members would receive a pro rata share of $55,500.00.[1] (See ECF No. 26-1, at 1.) In exchange for those funds, Class Members would release Defendant[2] from:

> All claims of any and every kind arising, in whole or in part, from or in any way related to Defendant's procurement and/or use of consumer reports or investigative consumer reports for employment purposes during the Covered Period, including all claims brought or that could have been brought under the Fair Credit Reporting Act for statutory, actual and punitive damages, all FCRA State/Local Equivalents,

---

[1] Pro rata shares are calculated based on the respective Net Settlement Fund, which is the amount remaining after deducting attorney's fees and costs and the cost of notice and administration of the settlement. (See ECF No. 26-1, at 1.)

[2] In addition to Defendant, "Released Parties" include:
    (ii) Defendant's past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Defendant, and (iii) the past, present and future shareholders, officers, directors, members, agents, employees, consultants, representatives, fiduciaries, insurers (including current and former agents), reinsurers, attorneys, legal representatives, predecessors, successors, and assigns of Defendant and the entities listed in (ii). The Released Parties, other than Defendant itself, are intended third party beneficiaries of the parties' Settlement.
    (ECF No. 19-2, at 10.)

express or implied breach of contract, tort, equity, unfair competition, or any other type of claim based on any federal, state or municipal statute, law, ordinance or regulation. Released Claims also include a waiver of California Civil Code § 1542 and like laws in other jurisdictions, and thus releases all known and unknown claims arising from or related to the facts and claims alleged or that could have been alleged in the Complaint.

(ECF No. 19-2, at 10.)

Plaintiff Stewart would receive $5,000 and forego future employment with Defendant in exchange for releasing his claims; a settlement administrator would receive about $25,000.00; and class counsel would receive attorney's fees "in an amount approved by the Court buy not to exceed thirty-three percent (33.33%) of the total settlement plus reimbursement of incurred costs." (See ECF No. 19-1, at 4.)

On May 20, 2024, the Court certified the Disclosure and Authorization Class and Pre-Adverse Action Subclass for purposes of judgment on the proposed settlement, appointed Plaintiff's counsel as class counsel, and preliminarily approved the settlement of this class action. (See ECF No. 20, at 11–19.) The Court also approved of the parties' proposed class member notification and opt-in forms for both classes and of the parties' plan to hire a settlement administrator to handle notice by mail, website, and live call center. (See id. at 19-20.)

The parties proceeded according to the approved plan. On June 14, 2024, the Court-approved notices were mailed to both classes; a toll-free phone line, 1-800-721-3646, was activated;

and a website, https://www.stewartvbaptistmhcsettlement.com, was
established to provide information. (See ECF No. 34-1, at 3.) Of
the 13,145 notices originally mailed, 1,360 were returned, 824
of those returned were remailed to updated addresses, and 72
remailed notices were returned undeliverable; 95.41 percent were
deemed delivered by the Settlement Administrator. (ECF No. 34-
2, at 2.)

Class Members could file claims by mail or via the website
no later than 11:59 PM on July 29, 2024. (See No. 34-1, at 3.)
701 claims were received by the deadline. (Id.) Of those
submitted, 663 of the clams were valid. (Id.) Only one of those
valid claims was filed by a Pre-Adverse Action subclass member.
(Id.) Two class members opted-out of the settlement,[3] and no
class members objected. (See id.)

On September 19, 2024, the Court held a Fairness Hearing
where it heard arguments from both sides. (See ECF No. 35.) No
one appeared in opposition.

---

[3] Due to the opt-in structure of the settlement, class members who
opted-out are in the same legal position as those who did not
respond at all: "All members of the Settlement Class who do not
submit a timely, valid Claim Form will be excluded from the
Settlement Class. There is no affirmative obligation for Settlement
Class Members to opt out of the settlement." See ECF No. 19-2, at
23.

## II.   Jurisdiction

Plaintiffs allege violations of the FCRA, 15 U.S.C. §§ 1681(b), et seq. This Court has subject matter jurisdiction over the FCRA claims under the general grant of federal question jurisdiction in 28 U.S.C. § 1331.

## III.  Standard of Review

### A.   Class Action Settlements Under Rule 23

"The claims, issues, or defenses of a certified class -- or a class proposed to be certified for purposes of settlement -- may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).

Rule 23(a), (b), and (g) set out the criteria for certifying a class action in federal court, including a settlement class. The Rule requires a party seeking class certification to demonstrate that: (1) the proposed class and class representatives meet all of the requirements of Rule 23(a); (2) the case fits into one of the categories of Rule 23(b); and (3) class counsel meets the requirements of Rule 23(g). William Rubenstein, Alba Conte, & Herbert B. Newberg, Newberg and Rubenstein on Class Actions § 3:1 (6th ed. 2022) ("Newberg"). A district court must give undiluted, even heightened, attention to Rule 23 protections before certifying a settlement class. UAW v. Gen. Motors Corp., 497 F.3d 615, 625 (6th Cir. 2007).

7

Rule 23(e)(2) establishes the standard for the court's approval of a proposed class action settlement. Under Rule 23(e)(2), the court must review whether the proposed settlement is "fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).[4]

---

[4] Before 2018, Rule 23(e)(2) directed courts to determine whether proposed class action settlements were "fair, adequate, and reasonable," but did not provide a standard for courts to apply. See Fed. R. Civ. P. 23(e)(2) (2017). Historically, courts applied judicially developed standards when deciding whether proposed class action settlements were fair. See Newberg § 13:48; UAW, 497 F.3d at 631 (discussing the Sixth Circuit's traditional multifactor test). Effective December 1, 2018, Rule 23(e) was substantially amended to provide an enumerated "shorter list of core concerns" for courts to focus on when evaluating whether a proposed class action settlement is fair. See Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.

**B.   Attorney's Fees and Costs**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When parties to a class action seek attorney's fees and costs, they must comply with the following:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find facts and state its legal conclusions under Rule 52(a).
>
> (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Id.

"In general, there are two methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund." Van Horn v. Nationwide Prop. & Cas. Ins. Co., 436 F. App'x 496, 498 (6th Cir. 2011). "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique circumstances of class actions in general, and of the unique circumstances of the actual cases before them.'" Id. (quoting Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513, 516 (6th Cir. 1993)). The award of attorney's fees

is within the court's discretion. <u>Bowling v. Pfizer, Inc.</u>, 102 F.3d 777, 779-80 (6th Cir. 1996).

In exercising their discretion, district courts often address the "<u>Ramey</u> factors":

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

<u>Moulton v. U.S. Steel Corp.</u>, 581 F.3d 344, 352 (6th Cir. 2009) (quotation marks and citation omitted); <u>see also</u> <u>Ramey v. Cincinnati Enquirer, Inc.</u>, 508 F.2d 1188, 1196 (6th Cir. 1974).

## IV. Analysis

### A. Class Action Settlement

#### 1. Certification

The first issue is certification of the Disclosure and Notification Class and Pre-Adverse Action Subclass (collectively, the "Classes"). Fed. R. Civ. P. 23(c)(1). The Court has previously analyzed these certification issues at length in its Preliminary Approval Order. (<u>See</u> ECF No. 20, at 11-15.)

Rule 23 requires a party seeking class certification to demonstrate that: (1) the proposed class and class representatives meet all of the requirements of Rule 23(a); (2)

the case fits into one of the categories of Rule 23(b); and (3) class counsel meets the requirements of Rule 23(g).

Rule 23(a) requires a party seeking class action certification to demonstrate that the proposed class and class representatives meet the requirements of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Courts consider two additional, implicit criteria: whether the class is definite or ascertainable and whether the class representative is a member of the class. Newberg § 3:1.

The Disclosure and Authorization Class meets the requirements of Rule 23(a). It is sufficiently numerous at 662 members. (See ECF No. 34-2, at 2.) This figure meets the Sixth Circuit's substantiality standard. See, e.g., Bacon v. Honda of Am. Mfg., Inc., 370 F.3d 565, 570 (6th Cir. 2004) (noting that the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)").

The Pre-Adverse Action Subclass, although originally expected to have 111 members, has a single member. (See ECF No. 34-2, at 2.) That would ordinarily fail to satisfy the requirement of numerosity. However, "if the subclass members are also members of the larger, already certified class, courts have held that the subclass may not be required to satisfy independently the numerosity requirement." Newberg § 3:16. Here,

11

the Pre-Adverse Action Subclass member is also a member of the Disclosure Class. (See ECF No. 19-1, at 4.) Although some Courts have refused to certify a subclass of one, to approve this settlement the Court will not require that this subclass independently satisfy numerosity because its member is also a member of the Disclosure Class. (See id.) See Newberg § 3:16.

Rule 23(a)'s other requirements are satisfied. The Classes are definite. The members of the Classes are known. (See ECF No. 34-2.) The Class Representative is a member of both the Class and Subclass. (See ECF No. 19-1, at 9-10.) The members of the Classes present common questions of law and fact about whether Defendant failed to follow the disclosure and authorization provisions of the FCRA. (See id.) The Class Representative's claims are typical of the claims of the members of the Classes. (See id. at 9-10.) Stewart is an adequate class representative. He does not have conflicts of interest with the class members. They seek the same relief based on the same legal theory. (See id.)

A case must fit at least one Rule 23(b) category to be maintained as a class action. Fed. R. Civ. P. 23(b). Plaintiffs contend that this action fits category 23(b)(3). (See id. at 10.) A Rule 23(b)(3) class action may be maintained if Rule 23(a) is satisfied and if the court finds that the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The Classes meet the requirements of Rule 23(b)(3). The Classes' common issues predominate over individual issues. Plaintiffs allege that Defendant engaged in the same course of conduct for all members of the Classes by using consumer credit report information for employment purposes without adhering to the employment provisions of FCRA. (See id. at 11.) A class action is the superior form of adjudicating the Classes' claims. Plaintiffs allege a common course of wrongful conduct, and it would not be economically feasible for the members of the Classes to pursue individual claims, with statutory damages ranging from $100.00 to $1,000.00. (See id. at 11-12.)

Rule 23(g) provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). When only one applicant seeks appointment as class counsel, a court should consider the work counsel has done in the case, counsel's experience, counsel's knowledge of the applicable law, and the resources class counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Marc R. Edelman seeks appointment as class counsel. After considering the 23(g)(1)(A) factors, the Court approved Edelman as class counsel in its May 20, 2024 Order granting Plaintiffs'

13

Motion for Preliminary Settlement Approval. (See ECF No. 20 at 15-16.) For the reasons stated in that Order, Edelman ("Class Counsel") is adequate class counsel under Rule 23(g).

The Classes meet the certification requirements of Rule 23 and are hereby CERTIFIED.

### 2. Settlement Approval

The fundamental question is whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

A court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

14

The Court held a fairness hearing on September 19, 2024. (See ECF No. 35.) Class Counsel and Defense Counsel were present. (See id.) The Court heard arguments from counsel on both sides about whether the Settlement is fair, reasonable, and adequate. The Court expressed some concerns about the settlement, and counsel for both parties addressed and satisfied the Court's concerns. The members of the Classes were informed of the fairness hearing's date, time, and location in settlement notices issued by the Settlement Administrator in June 2024. (See ECF No. 34-2, at 2, 10, 13.) No member of the classes filed opposition or appeared in opposition to the Settlement.

### Seven-Factor Test

Considering the factors set forth in the Sixth Circuit's seven-factor UAW test, [5] the parties' Proposal is fair, reasonable, and adequate. (See ECF No. 20, at 16-19.) See also Does 1-2 v. Déjà Vu Servs., Inc., 925 F.3d 886, 894-95 (6th Cir. 2019).

The risk of fraud or collusion is low. The parties have engaged in significant informal discovery, and the settlement was reached with the aid of an experienced FRCA mediator. (See

---

[5] "Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." UAW, 497 F.3d at 631.

ECF No. 34-1, at 4-5). This factor weighs in favor of final approval.

The complexity, risk, and duration of the litigation would be significant absent a settlement, especially given Class Counsel's concern that a recent change in the law would have added risk and complexity to the litigation. (See id. at 5-6 (the "Transunion decision has added an additional layer of uncertainty to FCRA class actions.")) Because this settlement eliminates the risk and expense of a lengthy and complex FCRA class action litigation, this factor also weighs in favor of approval.

As discussed, the amount of discovery engaged in by counsel, although informal, was sufficient to assess the claims, identify the affected individuals, value the claims, and reach a settlement. (See id. at 7-8.) This factor also weighs in favor of approval.

The likelihood of success on the merits is not readily ascertainable at this stage of the litigation. The claims might never have made it to trial. Alternatively, a jury might have awarded more. However, "[t]he fact that the plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement." Priddy v. Edelman, 883 F.2d 438, 447 (6th Cir. 1989). The recovery for class members in this settlement is consistent with the awards in similar FRCA class

16

action settlements. (See ECF No. 34-1, at 9). This weighs in favor of approval.

The opinion of experienced Class Counsel is that this settlement is in the best interest of the Class. (See id. at 9-10; ECF No. 26-2 ¶¶ 13-14.) This factor weighs in favor of approval. See Olden v. Gardner, 294 F. App'x 210, 219 (6th Cir. 2008).

The reaction of absent class members supports the conclusion that the settlement is adequate, given there were no objections and only two requests for exclusion. (See ECF No. 34-1, at 10-11) See Olden, 294 F. App'x at 217. This factor weighs in favor of approval.

The public interest is served by approval of this class action. Individually, class member would have little incentive to bring these claims, and the accountability and deterrent incentives of the FCRA would not be served. (See id. at 11.) Counsel represented at the Fairness Hearing that this action helped cause Defendant to change its procedures for FCRA compliance. This final factor also weighs in favor of approval.

Weighing all the factors, the Court finds the settlement to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

**B.   Attorney's Fees and Costs**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law

17

or by the parties' agreement." Fed. R. Civ. P. 23(h). Plaintiffs seek approval for attorney's fees, a service award general release payment for the Named Plaintiff, payment to the settlement administrator, and other costs. (ECF No. 26.) The procedural requirements of Rules 23(h) and 54(d)(2) have been met. Plaintiffs have moved for attorney's fees and costs. (Id.) In the Court-approved class notice, the Settlement Administrator informed the class members that Plaintiffs would seek fees and costs and specified the amounts they would seek. (See ECF No. 34-2, at 10, 13.) No one has objected to the requested fees and costs.

### 1.   Attorney's Fees

A district court has discretion to choose between the percentage-of-the-fund method and the lodestar method when awarding attorney's fees. Van Horn, 436 F. App'x at 498. "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." Rawlings, 9 F.3d at 516; Gascho v. Global Fitness Holdings, LLC, 822 F.3d 269, 279 (6th Cir. 2016). The court "generally must explain its 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.'" Van Horn, 436 F. App'x at 498 (quoting Moulton, 581 F.3d at 352).

In the Sixth Circuit, a court may base its fee award on the percentage-of-the-fund calculation and cross-check it with the lodestar method. See Bowling, 102 F.3d at 780. The "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share (i.e., a 'common fund')." Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010). The percentage-of-the-fund method is appropriate in this case. The Court will cross-check it with the lodestar method.

To conduct the percentage of the fund analysis, the ratio between attorney's fees and the benefit to the class is calculated by using the attorney's fees as the numerator and the dollar amount of the total benefit to the class as the denominator.[6] See Gascho, at 822 F.3d at 282. Class plaintiffs' "right to share the harvest upon proof of their identity, whether or not they exercise it, is a benefit created by the efforts of class representatives and their counsel." Id. at 279, citing Boeing v. Van Gemert, 444 U.S. 472, 480 (1980).

The Settlement provides for a Settlement Fund of up to $420,566.00. (ECF No. 26-1, at 4.) Class Counsel requests attorney's fees equal to one-third (33.33%) of the gross amount

---

[6] The total benefit to the class is the amount of fund benefits potentially available to be claimed, irrespective of the amount actually claimed by class members. See Boeing v. Van Gemert, 442 U.S. 472, 478-481 (1980).

of the Settlement Fund, or $140,048.00. (See id. at 5, 12.) That fee is "reasonable under the circumstances." Moulton, 581 F.3d at 352. It accords with general practice in common fund class action settlements. See In re Se. Milk Antitrust Litig., No. 2:07-cv-208, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012) (collecting cases and noting that a 33.33 percent attorney's fee "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); Gokare v. Fed. Express Corp., No. 2:11-cv-2131, 2013 WL 12094887, at *4 (W.D. Tenn. Nov. 22, 2013) (collecting cases in which courts in this Circuit have approved attorney's fee awards in common fund cases ranging from 30% to 33% of the total fund).

The Ramey factors support approving the fee. The award reasonably compensates Class Counsel for the value obtained, as evidenced by the attorney's fees awarded by other courts in the Sixth Circuit in FCRA class actions. (See discussion at ECF No. 26-1, at 4.) As discussed infra in the lodestar cross-check, the value of Class Counsel's services on an hourly basis is reasonable. Class Counsel took this case on a contingent fee basis. Society benefits from encouraging counsel to take on difficult class actions. The case was legally and factually complex. Counsel for both sides are able and respected.

The lodestar cross-check supports approving the fee. The lodestar is "the product of reasonable hours times a reasonable

rate." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); see also Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995). Lodestar multipliers may be applied to account for the risk that counsel assumes in undertaking a case, the quality of the work product, and the public benefit achieved. Rawlings, 9 F.3d at 516. Other FCRA class actions in the Sixth Circuit have been approved with multipliers between 2 and 4. See Sharp v. Technicolor Videocassette of Michigan, Inc., No 2:18-cv-02325-cvg (W.D. Tenn. December 5, 2019) (finding 2.08 to be "well within the range of acceptable multipliers" in an FRCA class action); Hillson v. Kelly Services Inc., 2017 WL 3446596 at *6 (E.D. Mich. August 11, 2017) (finding multiplier of 4 to be reasonable in FCRA class action).

Class Counsel has submitted his hours and hourly rates for this litigation. (ECF No. 26-1, at 5.) Class Counsel devoted a total of 85 hours to the case. (See id.) Class Counsel's hourly rate is $750.00. (See id.) The Court finds these hours and rates are reasonable. The resulting lodestar is $63,750.00. (See id.) Class Counsel requests an attorney's fee of $140,048.00. (See id.) The requested fee yields a lodestar multiplier of 2.197.

The 2.197 multiplier is reasonable. It reflects a good result achieved in a complex contingency fee case where experienced Class Counsel shared with Plaintiffs the risk of

nonrecovery litigating against highly qualified defense counsel. The multiplier will incentivize class actions that benefit the public through greater FCRA compliance. It accords with multipliers commonly awarded in other class actions. See Newberg § 15:87; Hillson, 2017 WL 3446596. Class Counsel's requested attorney's fee of $140,048.00, equal to one-third of the gross amount of the Settlement Fund, is reasonable.

### 2. Service Award

Incentive awards are appropriate in some class actions. See Hadix v. Johnson, 322 F.3d 895, 897-98 (6th Cir. 2003). Courts have considered three factors to determine whether service payments are warranted: (1) whether the representative's action protected the interests of and substantially benefitted Class Members; (2) whether the representative assumed "substantial direct and indirect financial risk;" and (3) the amount of time and effort the representative spent on the litigation. See Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 250 (S.D. Ohio 1991).

The Settlement Agreement provides a payment of $5,000 to Stewart for his service as named Plaintiff and in exchange for a general release of all claims against Defendant and an agreement not to seek future employment with Defendant—additional concessions that do not bind other class members. (See ECF No. 26-1, at 10.) Because Plaintiff was the only Class

Representative, without him, there would be no benefit to other class members. As Class Representative, he risked a higher individual claim to pursue class wide relief and incurred potential future employment consequences by leading a suit against a previous employer. (See id. at 11.) Plaintiff was actively involved, participated in negotiations, reviewed documents, and provided insight into Defendant's practices. (See ECF No. 26-2 ¶ 16.) The requested general release compensation and service award is appropriate and reasonable.

### 3. Other Costs

A court may award "reasonable . . . nontaxable costs that are authorized by law or by the parties' agreement."[7] Fed. R. Civ. P. 23(h). "[N]ontaxable costs are those reasonable expenses that are normally charged to a fee paying client." Newberg § 16:5; see also In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 534-35 (E.D. Mich. 2003) (in a common fund class action, awarding costs that were "the type routinely billed by attorneys to paying clients in similar cases") (citing In re Synthroid Mktg. Litig., 264 F.3d 712, 722 (7th Cir. 2001)).

Class Counsel request awards of: (1) $36,446.00 to the Settlement Administrator American Legal Claims Services, LLC for the costs of notice and claims processing and (2) $2,621.00 to

---

[7] Nontaxable costs are costs that cannot be taxed to the opposing party under 28 U.S.C. § 1920. See Newberg §§ 16:2, 16:5.

Class Counsel for litigation costs and expenses, "primarily expenses for filing fees, service of process, and mediation." (See ECF No. 26-1, at 9-10.)

Class Counsel's requested costs are reasonable. The Settlement Agreement contemplates them. (See ECF No. 19-2, at 14.) The costs requested are the type typically billed by attorneys to paying clients. See, e.g., N.Y. State Teachers' Ret. Sys. V. Gen. Motors Co., 315 F.R.D. 226, 244 (E.D. Mich. 2016). The requested costs are reasonable.


**V.    Conclusion**

For the foregoing reasons, Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, ECF No. 34, is GRANTED.

Plaintiff's Motion for Attorney's Fees and Costs, Service Award/General Release Payment to Class Representative, and Payment to Settlement Administrator, ECF No. 26, is also GRANTED.

The Court ORDERS that:

1.    The following Classes are CERTIFIED for final settlement purposes only:

> Disclosure and Authorization Class: All persons residing in the United States (1) who applied for a position with Defendant; (2) about whom Defendant procured a consumer report between June 7, 2019, through August 8, 2022; and (3) who submitted a valid claim to the Settlement Administrator within the claims deadline.

<u>Pre-Adverse Action Subclass</u>: All persons residing in the United States (1) who are members of the Disclosure and Authorization Class; (2) who Defendant declined to hire; (3) who were marked in Defendant's system as "Failed Background Report." "Null" or "Other;" (4) who Defendant has been unable to confirm receipt of a pre-adverse action notice; and (5) who submitted a valid claim to the Settlement Administrator within the claims deadline.

2.   Plaintiff Stewart is appointed representative for the Class and Subclass.

3.   Marc R. Edelman is appointed Class Counsel.

4.   The Settlement provides for a Settlement Fund of $420,566.00. That amount is approved. The Settlement is fair, reasonable, and adequate pursuant to the FCRA and Federal Rule of Civil Procedure 23(e)(2). The Settlement Agreement is incorporated into this Order and finally approved in its entirety.

5.   The record shows that settlement notices have been distributed to the members of the Classes in the manner approved in the Court's May 20, 2024 Order granting Plaintiffs' Motion for Preliminary Settlement Approval. The notices distributed: (1) constitute the best practicable notice under the circumstances; (2) constitute notice that was reasonably calculated, under the circumstances, to apprise all members of the Classes of the pendency of this litigation, the terms of the Settlement, their right to object to the Settlement, their right to exclude themselves from the Classes, and their right to appear

at the September 19, 2024 fairness hearing; (3) constitute due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (4) meet the requirements of the Federal Rules of Civil Procedure and due process.

6.   Two members of the Classes have requested exclusion and are excluded from the Settlement.

7.   No member of the Classes has objected to the Settlement.

8.   Each member of the Classes who has opted-in by submitting a valid claim by the deadline is bound by this Order, including, without limitation, the release of claims as set forth in the Settlement Agreement.

9.   Defendant is bound by this Order.

10.   The parties are directed to implement and consummate the Settlement according to the terms and provisions of the Settlement Agreement, including but not limited to the establishment of the Settlement Fund.

11.   Defendant will pay into the Settlement Fund the sum necessary to effect the Settlement Agreement and to implement this Court's orders.

12.   Plaintiff's claims and the claims of the Classes against Defendant are DISMISSED WITH PREJUDICE.

13.   Class Counsel is awarded attorney's fees in the amount of $140,048.00, equal to one-third of the gross amount of the Settlement Fund, to be paid from the Settlement Fund.

14.   Class Counsel is awarded $2,621.12 in litigation costs, to be paid from the Settlement Fund.

15.   Plaintiff Stewart is awarded a service payment in the amount of $5,000, to be paid from the Settlement Fund.

16.   The Settlement Administrator is awarded $36,446.00 for the costs of class notice and claims administration, to be paid from the Settlement Fund.

17.   The balance of the Settlement Fund shall be paid to the class members who have opted-in in accordance with the Settlement Agreement and this Court's orders.

18.   The Court retains continuing and exclusive jurisdiction over all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Settlement, and this Order.


IT IS SO ORDERED this _30th_ day of September, 2024.


/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE